**Alene WOLF, Individually and as Administratrix of the Estate of Raymond Combs, Deceased, Appellant,**

v.

**FRIEDMAN STEEL SALES, INC., Appellee.**

**No. 9443.**

Court of Appeals of Texas, Texarkana.

Aug. 12, 1986.

Rehearing Denied Sept. 2, 1986.

Kenneth L. Ross, Longview, Joe B. Lovelace, Lovelace & Thompson, Linden, for appellant.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellee.

PER CURIAM.

Arlene Wolf appeals a judgment non obstante veredicto in this wrongful death action.

Wolf brings two points of error contending that the trial court erroneously granted the motion for judgment non obstante veredicto, and that the trial court erroneously refused to grant a motion for judgment based upon the jury verdict. Wolf contends that the evidence of negligence was substantial, that the evidence was sufficient to support the jury's finding of proximate cause, and that an unauthorized driver does not destroy the causal connection.

Friedman brings two cross-points to the effect that the evidence in the record is factually insufficient to support affirmative findings to special issues number one and two.

Alene Wolf, as the surviving daughter of Raymond Combs, brought a negligence action against Friedman contending among other things that Friedman was negligent in failing to lock down the cargo chains on the headache rack of the tractor-trailer rig with which Combs' car collided.

The jury found Friedman negligent, and further found that this negligence was the proximate cause of the injuries and resulting death. Damages of $334,649.00 were found by the jury.

Wolf moved for judgment on the verdict, and Friedman moved for judgment non ob-

stante veredicto or alternatively to disregard the jury's findings. The trial court granted Friedman's motion for a judgment non obstante veredicto and entered a take nothing judgment in favor of Friedman.

■ Before a trial court can render a judgment non obstante veredicto, based on the absence of evidence, it must determine that there is no evidence having probative force upon which the jury could have made the findings relied upon. *Harbin v. Seale*, 461 S.W.2d 591 (Tex.1970). In making this determination, all evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952).

Friedman Steel Sales, Inc. is located in Texarkana, Texas. The company is engaged in buying and selling steel on a retail and wholesale level and owns four or five flatbed trucks used in this business. On March 18, 1981, A.J. Hendrix, a driver for Friedman, returned from a steel delivery in Sterling, Illinois. He parked the truck at the Friedman yard. The keys were given to Gene Carpenter, the Friedman warehouse foreman, and Hendrix went home. The foreman drove the truck into the warehouse for unloading. Before he went home at 5:00 p.m., the foreman parked the truck in the parking lot across the street, placed the key in the key rack in the office, and locked the office. After the foreman parked the truck on the lot, he placed the chains, which are used to secure the load when the truck is loaded, on the barrier (generally referred to as the "headache rack," and located between the cab and the trailer bed). The chains were not locked into place on the rack, and the foreman testified that he knew it was not safe to leave the chains unlocked during travel. He further was aware that if the chains were left loose and the truck was driven, the chains could possibly fall and sever the airbrake hose which in turn would cause the brakes to lock and stop the vehicle.

The company had no plans to use the truck for any purpose until the following day when it was to have been reloaded. The keys to the truck remained in the company office all night.

■ Friedman contends that on the night of March 18, or in the early morning hours of March 19, 1981, the truck and flatbed trailer in question were stolen from the parking lot. Wolf contends that the jury may not have believed the witnesses who testified that the truck was stolen and that the thief was an unauthorized driver. Indeed, Wolf pled that at the time the accident occurred the truck was "under the exclusive possession, management and control of Friedman Steel Sales Inc." However, we find that all of the evidence on this point indicates that the truck was taken by someone other than an employee of Friedman and without Friedman's permission, and we find no evidence to the contrary. Wolf had the burden of proof on this issue and the only reasonable inference is that the truck was driven to the location of the collision by an intermeddler who was not authorized to drive the truck. The mere fact that the truck belonged to Friedman did not prove that it was under Friedman's management and control at the time of the accident.

The truck was found seven to ten miles north of Atlanta, Texas, where it had been abandoned by the driver. The accident scene indicated that the headache rack had been pulled off the truck when the cargo chains became entangled around the tandem wheels of the truck, severing the airbrake hose and bringing the truck to a stop. The truck and attached flatbed trailer were positioned across the two northbound driving lanes of U.S. Highway 59 with the lights off. Raymond Combs was traveling north on that highway when he collided with the flatbed trailer. The impact partially decapitated him and caused his death.

■ The law of this State is that proximate cause includes two essential elements: (1) foreseeability and (2) cause in fact or causal relation. *Texas & Pacific Railway Company v. McCleery*, 418

S.W.2d 494 (Tex.1967); *Harrison v. Harrison,* 597 S.W.2d 477 (Tex.Civ.App.–Tyler 1980, writ ref'd n.r.e.). For a result to be legally foreseeable, all that is required is that the injury be of such a general character as might be reasonably anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Motsenbocker v. Wyatt,* 369 S.W.2d 319 (Tex. 1963); *Harrison v. Harrison, supra.*

■ As a general rule, a person is not held responsible in Texas for personal injury or property damages caused by a stolen vehicle. *Williamson v. Wayne Strand Pontiac-GMC,* 658 S.W.2d 263 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.); *Parker and Parker Construction Co. v. Morris,* 346 S.W.2d 922 (Tex.Civ.App.–El Paso 1961, writ ref'd n.r.e.); *Lollis v. Humble Oil & Refining Company,* 285 S.W.2d 249 (Tex.Civ.App.–El Paso 1955, writ ref'd n.r. e.). The case of *Bicknell v. Lloyd,* 635 S.W.2d 150 (Tex.App.–Houston [1st Dist.] 1982, no writ), is distinguishable from the general rule because the evidence indicated that based upon past experiences, the defendant could have reasonably foreseen unauthorized use of the three-wheel cart by children.

Only in two jurisdictions have the courts held generally that theft and subsequent negligent operations are the reasonably foreseeable risk of leaving a car unattended with the key in the ignition.[1] In the present case, we do not have a situation involving a key left in an ignition switch. Furthermore, the testimony indicated that there had been no burglaries in the vicinity of Friedman Steel Sales, Inc. In the *Williamson* case, citing *Parker and Parker Construction Co. v. Morris, supra,* the court set forth this principle of law as follows:

> We hold that the owner of a vehicle is not liable to third parties injured as a result of negligent operation of his vehicle by a thief or other person not authorized to drive the vehicle, and that the negligence, if any, of appellant in failing to equip his tractor with a switch and key, or other device, and to remove the key or otherwise render the vehicle inoperable when left unattended, was not a proximate cause of appellee's damage.

The factor that makes the present case different from the other Texas cases involving a theft or unauthorized use is that Wolf does not rely upon negligence in allowing the vehicle to be stolen or used without authorization, but rather relies upon an alleged act of negligence which occurred prior to the theft or unauthorized use by the intermeddler.

■ Friedman contends that the acts of the intermeddler constituted a new and independent cause. Texas law provides that an intervening cause reasonably foreseeable by the defendant is not such a new and independent cause as to break the chain of causation between the defendant's negligence and the injury complained of to the extent of relieving the defendant of liability for injury. The intervening cause of the injury, even if foreseeable, may be a concurring cause if the chain of causation flowing from the defendant's original negligence is continuous and unbroken. *Teer v. J. Weingarten, Inc.,* 426 S.W.2d 610 (Tex. Civ.App.–Houston [14th Dist.] 1968, writ ref'd n.r.e.).

Foreseeability or anticipation of injury is a necessary element of proximate cause; the test is whether in light of all attending circumstances, the injury was such as ought reasonably to have been anticipated as a consequence of the act. *Southwest Wheel & Manufacturing Co. v. Sholts,* 501 S.W.2d 387 (Tex.Civ.App.–Beaumont 1973, writ ref'd n.r.e.).

---

1. The court in the case of *Kiste v. Red Cab,* 122 Ind.App. 587, 106 N.E.2d 395 (1952), made this comment concerning those two jurisdictions: "We do not presume to affirm or deny that such circumstances are highly probable in the District of Columbia or the First District of the Appellate Court of Illinois. We do assert with some satisfaction that said circumstances are not reasonably foreseeable in this jurisdiction."

Wolf cites the case of *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985), in which the Supreme Court found that a property owner who violated an ordinance by not having a vacant building secured could be held liable for criminal conduct that occurred on those premises. In *Nixon v. Mr. Property Management, supra,* the president of that corporation testified that one reason vacant apartment units should be secured is to prevent this type of criminal activity. The court said in its opinion:

> Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct *is a foreseeable result of such negligence.* (Emphasis added).

The court in the *Nixon* case found that the evidence was replete with emphasis of prior violent crimes occurring at the apartments. In the present case, we have no evidence of prior crimes in the area where the truck was parked.

Wolf also cites *Northwest Mall, Inc. v. Lubri-lon International,* 681 S.W.2d 797 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.). This case involved a negligence action against a store in a shopping mall, because an employee failed to lock up a container of oil. The oil was spilled on the floor by vandals, and the employee of another store sustained injuries when she slipped and fell as a result of the oil spillage. The court in *Northwest Mall, Inc. v. Lubri-lon International, supra,* determined the employee who failed to lock up the oil knew that the area under the counter was open, that people roamed in the mall at nights and on weekends, and that the booth had been vandalized in the past. Such known circumstances showing the expectations of a third party wrongdoer do not exist in the present case.

We must determine whether the intervening force was a risk or hazard which the defendant was under a duty to have perceived and guarded against. We look to see if the harm suffered was a natural and probable consequence of the negligence. We also look to see what natural forces and what human conduct should have appeared likely to come upon the scene, and we weigh the dangerous consequences likely to flow from the conduct in light of these interventions. Annot., 100 A.L.R.2d 964 (1965), citing 2 Harper & James, *Torts* § 18.2.

█ In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, there is a distinction between a situation in which one has created a dangerous condition and a later actor observes, or by the circumstances should have observed, the existence of the dangerous condition and a situation in which the dangerous condition is not apparent and cannot be observed by the actor. In regard to the first situation, the intervening act interrupts the natural sequence of the events and cuts off the legal effect of the negligence of the initial actor. This is based upon the premise that it is not reasonable to foresee or expect that one who actually becomes cognizant of a dangerous condition in ample time to avert the injury will fail to do so. In the present case, it was a reasonable expectation that a person would secure the chains before driving the truck. It was further a reasonable expectation that the driver would not abandon the truck positioned across the highway and would not leave the truck unlighted so there was no warning to oncoming vehicles.

In deciding whether an act is a concurring or a new and independent cause, we are faced with the difficulty of applying the tort standards to specific facts. Some of the salient considerations in determining whether an intervening force is a superseding cause of harm to another are found in Restatement (Second) of Torts § 442 (1986), and are set forth in the case of *Humble Oil & Refining Company v. Whitten,* 427 S.W.2d 313 (Tex.1968). These considerations are as follows:

> (a) the fact that its intervention brings about harm different in kind from that

which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening forces operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

In the present case, it appears that (a) applies, because the foreseeable results of not securing the chains would be to create a traffic hazard if the chains fell and severed the airbrake hose causing the vehicle to stop.

The remaining criteria stated in clauses (b), (c), (d), (e), and (f) require the conclusion that the acts of the intermeddler created a new and intervening cause. There was no evidence to indicate that the foreman expected an unauthorized person to drive the vehicle. The unsecured chains were not a latent defect, but readily apparent to anyone driving the vehicle. (Even though the potential danger may not have been comprehended by an untrained driver, there was no expectation that an untrained driver would be operating the vehicle.) Thus, there was no evidence from which we may conclude that the foreman could expect someone to drive the vehicle with unsecured chains creating an unsafe condition. Furthermore, the fact that the vehicle was abandoned at night across the highway with no lights on was not a likely consequence of the foreman's omission. These unusual consequences must be char-acterized as extraordinary under the circumstances. It cannot be said that the omissions which occurred after the truck became disabled and was abandoned in an unlighted condition across a highway were the normal results of the situation created by not securing the chains.

The intermeddler has become an intervening force not under the control of Friedman, and the acts of the intermeddler were certainly calculated to make that unknown person liable for the injuries. The intermeddler was responsible for setting the force in motion, although he found the truck in a condition in which it was dangerous to drive, his driving the vehicle in this condition and his subsequent acts constituted an intervening force.

A prior cause cannot be made the basis for an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. *Baughn v. Platt*, 123 Tex. 486, 72 S.W.2d 580 (1934); *Bell v. Fore*, 419 S.W.2d 686 (Tex.Civ.App.–Texarkana 1967) *aff'd sub nom, Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968).

In order to warrant a finding that an injury is the proximate result of an act of negligence, either by commission or omission, it must appear the injury was the natural and probable consequence of the negligent act complained of, and that the party committing the negligent act ought to have foreseen such consequences in the light of the attending circumstances. *Texas & P. Ry. Co. v. Bigham*, 90 Tex. 223, 38 S.W. 162 (1896).

As the court said in *Texas & P. Ry. Co. v. Bigham, supra:*

[N]othing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff.

We find no evidence of probative force to support a finding that the foreman, Gene

Carpenter, could have foreseen that the injuries to the deceased would have resulted from his failure to secure the chains on the parked vehicle.

 There is a line of cases in Texas which hold that foreseeability is not a necessary element when concurrent negligence or a concurrent act cooperates with the still persisting original act in bringing about the injury. *Bell v. Campbell,* 434 S.W.2d 117 (Tex.1968). These cases require that the condition created by the negligence be an active and efficient cause of the injury. In the present case, the chains did not create a dangerous condition until the vehicle was driven, but the act of leaving the chains unsecured was not a direct and immediate cause of the occurrence. Rather the act of abandoning the vehicle across the highway without lights was the active cause of the injuries.

Under the undisputed evidence concerning the sequence of events, the trial court correctly granted a judgment non obstante veredicto.

The judgment of the trial court is affirmed.